I.U.O.E. LOCAL 347,

v.

ARCO CHEMICAL COMPANY.

Civil Action No. G–97–37.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 7, 1997.

Russell G. Burwell, Burwell Enos & Baron, Texas City, TX, for Petitioner.

Katrina Grider, Katrina Grider and Associates, Houston, TX, for Defendant.

### ORDER

KENT, District Judge.

This is a review of an arbitration proceeding in which Al Forsten, an employee of ARCO Chemical Company ("ARCO"), was given three days suspension without pay for allegedly committing a safety violation by placing an emergency relief valve in the closed position when it should have been placed in the open position. On January 22, 1997, Mr. Forsten's union, International Union of Operating Engineers, Local 347 ("Union"), filed with this Court Plaintiff's Original Complaint to Vacate Arbitration Award. After answering Plaintiff's Complaint, Defendant ARCO filed its Motion to Enforce Arbitration Award of August 12, 1997. For the reasons set forth below, Defendant's Motion to Enforce Arbitration Award is **GRANTED** and Plaintiff's Complaint to Vacate the Arbi-

tration Award is **DISMISSED WITH PREJUDICE.**

### I. FACTUAL SUMMARY

Al Forsten was employed as operator # 2 at ARCO's Bayport Plant I in Pasadena, Texas. Mr. Forsten had been employed at the Plant for eight years and had been in the classification of operator for over seven of those years. On October 5, 1995, as part as his duties as operator, Mr. Forsten was tasked with completing a startup safety inspection on certain plant equipment that had been shutdown for maintenance. In particular, Mr. Forsten was responsible for ensuring that certain pressure relief valves were in the open position prior to startup. As part of startup procedure, Mr. Forsten prepared a checklist that listed one of the valves as "open." Two days later, however, another operator at the plant discovered that same valve in the closed position, contrary to Mr. Forsten's signed checklist. Because the valve in question was a relief valve for the release of excess pressure, operating the Plant with the valve in a closed position created an extremely hazardous condition. Therefore, following discovery of the closed valve, and after ARCO determined that Mr. Forsten had "signed off" the valve as open, Mr. Forsten was suspended for three days without pay by his supervisor, Ricky Brazeale.

Pursuant to their Collective Bargaining Agreement, the Union notified ARCO of its intention to arbitrate Mr. Forsten's suspension. A hearing of the grievance was held on August 20, 1996 before Claude B. Lilly in Pasadena, Texas. The sole issue before the arbitrator was "Did the Company have just cause to suspend Grievant. If not, what is the proper remedy?" (Arb. Award, at 3).[1] On November 10, 1996, after reviewing evidence and hearing testimony, Mr. Lilly ruled that Mr. Forsten had violated ARCO's safety procedures and denied Mr. Forsten's grievance.

---

1. ARCO stated the issue slightly differently; however, the Court finds the question essentially the same as that proffered by the Union. ARCO stated the issue to be: "A. Whether the Company properly disciplined the Grievant in accord with the Articles of Agreement and the Company's rules and regulations. B. If not, then what is the appropriate remedy?" (Arb. Award, at 3).

## 1096

## II. ANALYSIS

District courts have jurisdiction to review an arbitration proceeding pursuant to 29 U.S.C. § 185. Ordinarily, however, such review is extremely limited in its scope. *See Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 413 (5th Cir.1990) ("Judicial review of an arbitration award is extraordinarily narrow...."); *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n,* 889 F.2d 599, 602 (5th Cir.1989). Indeed, the Fifth Circuit has repeatedly stated that an arbitration award should "not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers." *Gateway Technologies, Inc. v. MCI Telecommunications Corp.,* 64 F.3d 993, 996 (5th Cir.1995); *Manville Forest Prods., Corp. v. United Paperworkers Intern.,* 831 F.2d 72, 74 (5th Cir.1987) (stating that a court reviews an arbitration award by asking whether an arbitration award "stems from fraud or partiality; ... concerns a matter not subject to arbitration under the contract; ... does not 'dra[w] its essence' from the contract; ... or ... violates public policy."). Through this limited prism, District Courts also retain the power to vacate awards when they are found to be arbitrary or capricious, or in violation of public policy. *See Forsythe Intern., S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1021 (5th Cir.1990) (positing that an arbitration award should be vacated if it is fundamentally unfair); *Manville Forest Prods.,* 831 F.2d at 74 (opining that an arbitration award should be vacated if violates public policy); *International Ass'n of Machinists & Aerospace Workers, Dist. No. 145 v. Modern Air Transport, Inc.,* 495 F.2d 1241, 1244 (5th Cir.1974) (noting that an arbitration decision must have a "foundation in reason or fact."); *Brotherhood of R.R. v. Central Georgia Ry. Co.,* 415 F.2d 403, 412 (5th Cir.1969) (opining that an arbitration award should be enforced so long as it has a basis that is "rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.").

The issue before the arbitrator was whether ARCO had just cause to suspend Mr. Forsten. In the documents filed with the Court, both ARCO and the Union continue to argue the justness of the arbitrator's decision and the justness of Mr. Forsten's suspension in light of the facts alleged. The Union contends that Mr. Forsten is not responsible for leaving the valve in the closed position and that he should not have been punished for such. To the contrary, ARCO maintains that Mr. Forsten signed the checklist, noting incorrectly that the valve was open and therefore his suspension was proper. It is well established that a reviewing court may not reconsider the merits of a case. According to the Supreme Court:

"The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in a written instrument which will support the claim."

*United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (quoting *United Steelworkers of America v. American Mfg., Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). As long as the arbitrator has acted within the scope of his authority and is "even arguably construing or applying the contract," a court may not reject an arbitrator's interpretation of a contract, even if the court is convinced that a serious error has been committed. *Id.* at 38, 108 S.Ct. at 371. It is apparent to this Court that the parties are primarily fighting about disputed facts, not about the legal correctness of the arbitration decision. Essentially, the main issue before the Court as briefed by the parties boils down to: Did he, or did he not, leave the valve open? This is a factual inquiry; a question previously determined by an arbitrator after having heard the evidence presented. Although the Court is sympathetic to Plaintiff's plight, it appears that the arbitrator carefully considered the facts and circumstances surrounding the incident leading to Mr. Forsten's suspension and concluded that it was "highly probable" that Mr. Forsten committed a safety violation. The Court finds that the arbitrator had a factual basis for making this decision which was

rationally inferable, if not obviously drawn, from the letter, wording and purpose of the Agreement. Absent sufficient grounds for vacating the arbitrator's award, which do not exist, the Court will not disturb the arbitrator's factual findings. Therefore, in spite of the parties' desires to continue the arbitration of their factual dispute in this forum, as stated by the Supreme Court, this Court has "no business weighing the merits of the grievance." *Id.* at 36, 108 S.Ct. at 369.

█ The proper inquiry in this case is *not* whether the facts demonstrate just cause to suspend Mr. Forsten; instead, the *proper* inquiry is whether suspending Mr. Forsten without pay was a proper disciplinary measure in light of relevant contractual provisions. That is, *did the arbitrator exceed his authority* when he upheld Mr. Forsten's suspension? *See* 9 U.S.C. § 10(d) (allowing a district court to vacate an award where the arbitrator exceeds his power). To answer this question, the Court must look to the parties' Agreement.[2] Relevant provisions of the Agreement are reproduced in part here:

Article 4: Union Cooperation

Members *will cooperate in:* all *safety,* health and security measures established by the Company ...

Article 9: Management Clause

The Company shall continue to have and exercise all of the rights it had prior to the selection by the employees of a collective bargaining agent, except as such rights are relinquished or modified by provisions of this Agreement.... Such rights include ... the right to manage the Company's business, ... the right to hire, assign, schedule, layoff, discipline, discharge, *suspend,* promote, demote, or transfer employees....

Article 21: Safety and Sanitation

Section 21:1 As part of the overall safety program, the Company will inform employees of Plant rules and regulations.

Section 21:2 Employees shall report promptly to their immediate foreman or supervisor any unsafe conditions or act....

(Arb. Award, at 3–4 (emphasis added)).

█ The Court finds that the Agreement clearly vests authority in the arbitrator and that he properly exercised that authority. Article 9 of the Agreement reserves management's right to suspend employees for disciplinary reasons. Pursuant to the Agreement, Mr. Forsten was suspended without pay for three days. No other provision of the Agreement addresses discipline or suspension or limits ARCO's right to discipline its employees.[3] Although the arbitrator implicitly found it, and although the parties argued it and apparently agreed to it, the controlling Collective Bargaining Agreement does not require "just cause" or any other standard for employee suspension.[4] The Agreement does, however, provide for arbitration of disputes between the parties.[5] Arbitration was conducted in accordance with the Agreement, and an arbitrator decided that Mr. Forsten was properly disciplined in accordance with the parties' Agreement. A reviewing court cannot disturb an arbitra-

---

2. Throughout the Agreement, it is clear that safety was a major concern when the Agreement was written.

3. Article 6 of the Agreement addresses discharge, allowing an employee to arbitrate when he feels that such discharge is not *justified.*

4. After a careful review, the Court finds that the parties' Agreement does not require a finding of just cause prior to *suspending* an employee; instead, just cause is only required for discharge. However, the question before the arbitrator and the question argued here is whether ARCO had just cause to discipline Mr. Forsten. The Court assumes the parties agreed to this standard. In support of this assumption, the Court notes that neither party argues that using this standard to determine the correctness of Mr. Forsten's suspension violated the provisions of the Agreement. Although the arbitrator never explicitly stated

that just cause existed to support Mr. Forsten's termination, the Fifth Circuit has clearly held on several occasions that an arbitrator's award need not explicitly state that an employer had just cause to discipline an employee when the arbitrator's decision as a whole *implicitly* finds just cause. *See Delta Queen,* 889 F.2d at 604; *Container Prods., Inc. v. United Steelworkers of America,* 873 F.2d 818, 820 (5th Cir.1989). Here, by denying Mr. Forsten's grievance and stating that it was "highly probable" that Mr. Forsten had violated ARCO's safety policies and procedures, the arbitrator implicitly found just cause.

5. The Agreement provides: "Any difference or dispute between the Company and the Union ... shall be settled in accordance with the provisions of this Article." (Agreement, p. 3).

tor's award as long as the decision "draws its essence from the collective bargaining agreement" and is not based on the arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). It is clear to the Court that the arbitrator's decision falls within the parameters laid out in *Misco;* by upholding Mr. Forsten's suspension, the arbitrator was at least "arguably construing or applying the contract." *Misco*, 484 U.S. at 38, 108 S.Ct. at 371.

■ Having already determined that the arbitrator acted within his scope of authority, and finding no fraud, corruption, partiality, or public policy concerns, the Court now turns to the issue of whether the arbitrator's decision is arbitrary, capricious, or fundamentally unfair. *See Forsythe Intern.*, 915 F.2d at 1021 (noting that a District Court can vacate an arbitration award found to be arbitrary, capricious, or fundamentally unfair); *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979). In its Reply to the Motion to Vacate Arbitration Award, the Union argues that because no other explanation was offered by Mr. Forsten himself that would explain the valve being closed, the arbitrator upheld the suspension, holding Mr. Forsten responsible for the safety violation. The Union further argues that placing this responsibility on Mr. Forsten violates due process by unfairly shifting the burden to Mr. Forsten to prove his innocence. According to the Union, the following language contained in the arbitrator's decision demonstrates this burden shift:

> "An examination of the testimony and evidence in this case leads to the conclusion that while the checklist prepared by Grievant on October 5, 1995 certified the valve F–612 was in open position preparatory to startup it was in fact in a closed position on October 8, 1995.
>
> . . .
>
> [I]t then became necessary to put forward some reasonable explanation or circumstances which would furnish a basis for concluding that something intervened be-

tween October 5th and October 8th to account for the difference in the position of the valve as reported on October 5th and observed on October 8th. Nothing was submitted.

> . . .
>
> To absolve the Grievant from responsibility for this unsafe condition of the union requires more than mere conjecture or speculation. There must be something substantial and convincing to indicate he was not mistaken in certifying the valve was open when in fact it was found to be closed some 48 hours later."

Assuming *arguendo* that the burden initially rested with ARCO to prove just cause for Mr. Forsten's suspension, the Court concedes that the above-quoted language could be read as shifting this burden from ARCO to the Union to prove Mr. Forsten's innocence. From a different point of view, however, this language could just as easily be interpreted to mean the arbitrator believed the Union had failed to rebut the evidence presented by ARCO which demonstrated that Mr. Forsten was indeed responsible for the closed valve.[6] Notwithstanding the many interpretations that could be derived from the arbitrator's award, the Court notes that just cause is a question of fact, separate from the question of what quantum of proof is necessary to establish the fact. Although they apparently agreed to use it as the standard, the parties did not define "just cause" prior to arbitration and it is not defined in the Agreement. Its existence or absence, and the method used to determine its existence or absence, was left to the arbitrator. The parties bargained for his decision and they agreed to be bound by it. " 'To separate the just causes for discharge from the unjust was precisely what the parties clothed the arbitrator with the authority to do.' " *Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 819 (5th Cir.1973) (quoting *International Union of Electrical Radio & Machine Workers v. Otis Elevator*, 314 F.2d 25, 28 (2d Cir.1963)); *see also Teamsters, Chauffeurs,*

---

**6.** "[T]he courts are bound to interpret the arbitrator's award and the contract broadly so as to uphold the award." *Manville Forest Prods.*, 831

F.2d at 74 (citing *Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361).

*Warehousemen, Helpers, & Food Processors v. Stanley Structures, Inc.*, 735 F.2d 903, 905 (5th Cir.1984) (emphasizing the binding nature of factual and legal determinations made by an arbitrator). The Court finds that the arbitrator's decision derives its essence from the Agreement, which is all that is required. Absent a demonstration that the arbitrator veered from the Agreement or a finding of other recognized grounds for vacating the arbitrator's award, this Court will not question the arbitrator's internal thought processes used in reaching his decision. *See Mason & Hanger–Silas Mason Co. v. Metal Trades Council of Amarillo*, 726 F.2d 166, 167 (5th Cir.1984) (opining that a court should not "parse the reasoning of the arbitrator," for "that is not within [the Court's] authority" so long as his decision "was . . . based upon the provisions of the collective bargaining agreement.").

■■ It appears to the Court that the Union assumes arbitration proceedings include the same procedural protections inherent in the litigation process. Although arbitration appears in many respects to be similar to litigation, it is in fact *sui generis. See Amalgamated Meat Cutters*, 481 F.2d at 819 (upholding an arbitrator's award and opining that it was permissible to allow the arbitrator to establish the burden of proof he felt appropriate); *see also Forsythe Intern.*, 915 F.2d at 1021 ("We merely ask here whether the [arbitration] panel discharged its duty measured by the more modest procedural and evidentiary strictures of arbitration." (emphasis added)). Arbitration acts as a speedy and informal alternative to litigation, resolving disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez–de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Thus, rigorous procedural limitations may not be superimposed on the very process designed to avoid such limitations. *See*

*Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.*, 20 F.R.D. 359, 362 (S.D.N.Y.1957). The informal nature of arbitration proceedings effectuates the national policy favoring arbitration, and such proceedings require "expeditious and summary hearing, with only restricted inquiry into factual issues." *Legion Ins. Co. v. Insurance General Agency*, Inc., 822 F.2d 541, 543 (5th Cir.1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983)). As the Fifth Circuit has observed: "Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial. But because 'the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him.'" *Forsythe, Intern.*, 915 F.2d at 1021–22 (quoting *Fairchild & Co., Inc. v. Richmond, F. & P. R.*, 516 F.Supp. 1305, 1313 (D.D.C.1981)). Thus, whatever indignation or uneasiness this Court may experience when examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so. No such basis exists here.[7]

Rather than burden of proof questions, the proper inquiry for this Court is whether the means used by the arbitrator rise to the level of arbitrariness, capriciousness or fundamental unfairness. *See, e.g., Gulf Coast Industrial Workers Union v. Exxon Co.*, 70 F.3d 847, 849 (5th Cir.1995) (vacating an arbitration award because the arbitrator lead the company into believing that evidence of a positive drug test was admitted into evidence and then later refusing to consider it on the ground that it was unreliable hearsay); *Forsythe, Intern.*, 915 F.2d at 1021, 1023 (upholding an arbitrator's decision despite clear evidence of arbitrator inattention and refusal by the panel to hear certain evidence). They do not. After reviewing the arbitrator's written decision, it appears that the arbitrator carefully considered all of the facts and

---

**7.** The Court is tempted to administratively close this case and remand it to the arbitrator for further consideration; however, by doing this, the Court would essentially be vacating the arbitrator's award. *Cf. Forsythe Intern.*, 915 F.2d at 1019 (holding that when a district court orders new arbitration rather than clarification, appellate review is proper).

circumstances when reaching his decision. The arbitrator heard live testimony, examined documentary evidence, and reviewed posthearing briefs. No matter the Court's feelings on the correctness of the arbitrator's decision, given the scope of review and the strong federal policy favoring arbitration, the Court cannot disturb it. *See Safeway Stores v. Bakery & Confectionery Workers Intern. Union, Local 111,* 390 F.2d 79, 82 (5th Cir. 1968) (noting that the scope of review of arbitration findings is very narrow because of the strong federal policy favoring arbitration); *Dallas Typographical Union v. A.H. Belo Corp.,* 372 F.2d 577, 582 (5th Cir.1967) (stating that the arbitrator's job is to determine just cause and it "matters not whether his reasons were sound or unsound"); *see also W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (noting that a court must accept the facts found by the arbitrator and the arbitrator's interpretation of the contract and applicable law).[8]

The Court finds troubling and disappointing Mr. Forsten's perception that the decision reached by the arbitrator was fundamentally unfair.[9] The Court also understands the intensity of feeling experienced when a longtime, dedicated employee believes himself to be wrongly accused. Moreover, the Court recognizes the importance of fairness and reasoned decision making, and the perception thereof, in the arbitration process, which is quickly becoming a substitute for litigation. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (observing that there is a strong national policy encouraging the use of arbitration); *Life of America Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 412–13 (5th Cir.1984); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994) (defining arbitration as "a private system of justice offering benefits of reduced delay and expense"). However, when reviewing arbitration decisions, a court many times has no other option

but to enforce an arbitration award, even when the court believes the arbitrator's decision is dead wrong. *See United Paperworkers,* 484 U.S. at 38, 108 S.Ct. at 371 (opining that a reviewing court may not reject an arbitrator's findings simply because the court disagrees with them); *Safeway Stores,* 390 F.2d at 82 ("[T]he arbiter's error—even though on an issue which the reviewing court would have arrived at a different conclusion—does not *ipso facto* make the arbiter an outlaw.... "). Thus, although this Court may have reached a different conclusion in light of the facts alleged, or may have done things differently, given the extremely limited scope of review, the Court's inquiry must end here.

For the reasons state above, the Defendant's Motion to Enforce Arbitration Award is **GRANTED,** the Plaintiff's Complaint to Vacate Arbitration Award is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**

---

**8.** An important consideration in today's decision is the minor nature of disciplinary measures used. Because only suspension is involved, instead of Mr. Forsten's livelihood, the Court is very hesitant to vacate the arbitrator's award in light of the restricted scope of review.

**9.** Moreover, the Court appreciates the good work by both parties' counsel in this case.