Steve WEINBERG, and Steve Weinberg & Associates, Plaintiffs,

v.

Howard F. SILBER, Individually and D/B/A Pacific Sports & Entertainment and Pacific Sports Entertainment, Inc., Defendants.

No. 3:99–CV–1432–X.

United States District Court,
N.D. Texas,
Dallas Division.

April 25, 2001.

J. Kent Davenport, Attorney at Law, Newman Davenport & Epstein, Dallas, David R. Childress, Attorney at Law, Whitaker Chalk Swindle & Sawyer, Fort Worth, for Steve Weinberg, Steve Weinberg & Associates Inc., plaintiffs.

Michael S. Carnahan, Attorney at Law, Touchstone Bernays Johnston Beall & Smith, Dallas, for Howard F. Silber, Individually and dba Pacific Sports & Entertainment, Pacific Sports & Entertainment, Inc., defendants.

## MEMORANDUM OPINION & ORDER

KENDALL, District Judge.

Before the Court are:

(1) Defendants' Motion to Confirm Arbitration Award, filed November 9, 2000; Plaintiffs' Response to Defendants' Motion and Cross–Motion to Vacate Arbitration Award, filed November 29, 2000; Defendants' Combined Reply in support of Motion to Confirm and Response to Motion to Vacate, filed December 14, 2000; Plaintiffs' Reply in Support of Motion to Vacate, filed December 29, 2000; and all supplemental materials filed in connection with the cross-motions; and

(2) Defendants' Motion for Attorney's fees and pre-judgment interest, filed December 14, 2000.

The parties' request for a hearing in connection with this matter is **DENIED.** Plaintiff's Motion to Vacate is largely predicated on attempts to have this Court re-evaluate the arbitrator's findings of fact. There are no contested questions of fact concerning the arbitrator's conduct in this case that would necessitate an evidentiary hearing. Instead, the question is whether certain arbitrator behavior alleged by the Plaintiff rises to a level of fundamental unfairness that would justify vacation. A hearing is not necessary to resolve these issues. *See Legion Ins. Co. v. Ins. Gen. Agency, Inc.,* 822 F.2d 541 (5th Cir.1987).

For the reasons stated below, Plaintiff's Motion to Vacate the Award is **DENIED.** Defendant's Motion to Confirm the Award is **DENIED** without prejudice. This case is **STAYED** pending remand to the arbitrator, until such time as a corrected award is presented to the Court with a renewed motion to confirm, or until the parties inform the Court that they have resolved their dispute without the need for further action by the Court. To the extent Plaintiff has requested that proceedings be "re-opened" and errors in the award be corrected, the Court **GRANTS** that limited request for relief and **REMANDS** the case to the arbitrator with instructions that he clarify the award as discussed in Parts II(C.) and III., below. Defendant's Motion for Attorney's Fees and pre-judgment interest are **DENIED** without prejudice since the Court is not entering a final judgment at this time.

## I. Background

This case involves a dispute between two feuding sports agents who at one time had several joint venture agreements to recruit clients and split fees. In 1998, the parties entered an oral joint venture agreement related to professional football players. The parties did not commit the agreement to writing because Plaintiff Weinberg and Defendant Silber could not agree on written terms. *See* Weinberg Aff. ¶ 21, Pl.'s Exh. 1. The various joint venture arrangements subsequently fell apart in a particularly acrimonious fashion, and the parties hotly disputed the amounts of money they owed to each other. The disputes concerned both shared expenses, and contests over which high-profile professional athletes were clients of the joint venture, whose fees were to be shared.

After filing several lawsuits against each other, the parties signed an agreement on December 1, 1999 to arbitrate their disputes, releasing each other from all claims not arbitrated. *See* Agreement to Arbitrate Disputes, ¶¶ 1, 5, 8(A), Pl.'s Exh. 17. The parties agreed to Gary Berman of Dallas, Texas, as arbitrator, and set a date of April 1, 2000 by which time the arbitration was to occur. *See id.,* at ¶ 8(H). The parties do not appear to have signed a separate contract with Gary Berman establishing the ground rules for the arbitration or, if so, neither party has submitted such a document to the Court. An arbitration hearing occurred by March 17, 2000. *See* 3/23/00 Carnahan letter to Berman, Pl.'s Exh. 20. Neither party has provided evidence concerning exactly what was and was not discussed at the March, 2000 arbitration hearing, and the hearing was not transcribed.

The arbitrator delayed his decision after the conclusion of the hearing for many months. In September, 2000, Plaintiff successfully negotiated a nine-year, $135,450,000 deal on behalf of one of the disputed clients: Washington Redskins running back Stephen Davis. Shortly thereafter, the arbitrator contacted Plaintiff Weinberg's attorney and requested that he provide information concerning the new Davis contract. *See* Davenport Aff. ¶ 3, Pl.'s Exh. 35. Plaintiff contends that the arbitrator told his attorney that without receiving such information, "he would accept as fact the outside information contained in the news reports . . . and calculate . . . an award using that evidence." *See* Davenport Aff., ¶ 4. Plaintiff complied with this request, and there is no evidence that he objected.

Arbitrator Berman issued his award on October 20, 2000. *See* Arbitration Award, Pl.'s Exh. 27. The arbitrator ordered that Weinberg pay Silber a total of $2,079,495, relating exclusively to fees earned from the representation of Stephen Davis. *See id.* at ¶¶ 8–9. The arbitrator ordered that each party take nothing with respect to the numerous other clients subject to the arbitration. *See id.* at ¶ 5.

The parties have brought cross motions to confirm and vacate the arbitration award. Plaintiff Weinberg argues that the arbitrator erred in finding that Stephen Davis was ever a subject of the parties' joint venture agreement, erred in finding that Plaintiff would be entitled to three percent of Stephen Davis's massive nine year deal, and erred in considering the September, 2000 Davis contract six months after the close of the actual hearing. Furthermore, Plaintiff argues that there are certain errors present on the face of the award, and that there are ambiguities in the ultimate amount Weinberg must pay Silber due to certain unaddressed contingencies. Plaintiff requests that this Court either vacate the award and refer it to a new arbitrator, modify the award to correct certain errors, or otherwise "re-open" the arbitration proceedings. *See* Pl.'s

Resp., at 18–19, 22. Defendant moves to confirm the award.

## II. Analysis

### A. Review of Arbitral Awards

 Under 9 U.S.C. § 9, an arbitration award may be confirmed in the district court in and for the district in which the award was made. The Federal Arbitration Act lists the bases for vacating or modifying an arbitral award. *See* 9 U.S.C. § 10(a). The Fifth Circuit has also identified several non-statutory bases for vacating an award, such as (1) the award is contrary to public policy; (2) the award is arbitrary and capricious; (3) the award fails to draw its essence from the underlying contract; and (4) the award shows manifest disregard for the law. *See Williams v. Cigna Finan. Advisors, Inc.,* 197 F.3d 752 (5th Cir.1999), *cert. denied,* 529 U.S. 1099, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000).

 District Court review of arbitration awards is extremely narrow and deferential to the arbitrator. *See Antwine v. Prudential Bache Secs., Inc.,* 899 F.2d 410, 413 (5th Cir.1990). The limited review is designed to identify those errors that render the arbitration award at issue "fundamentally unfair." *See Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1020 (5th Cir.1990). The policy behind this extreme deference, even in the face of erroneous findings of fact or law by the arbitrator, is to prevent arbitration from being "transformed from a commercially useful alternative method of dispute resolution into a burdensome additional step on the march through the court system." *Flexible Manuf. Sys. Pty., Inc. v. Super Products Corp.,* 86 F.3d 96, 100 (7th Cir. 1996). "Whatever indignation a reviewing court may experience in reviewing the record, it must resist the temptation to condemn imperfect proceedings without a

sound statutory basis for doing so." *Forsythe Int'l,* 915 F.2d at 1022.

### B. Plaintiff's Bases for Vacatur

Plaintiff Weinberg, in his combined Response to Defendant's Motion to Confirm, and Motion to Vacate, makes numerous arguments contesting the validity of the arbitration award. These arguments can be broadly grouped into the following categories:

(1) The arbitrator could not issue a binding award because Plaintiff Weinberg and Defendant Silber's agreement to arbitrate was void;

(2) The award should be vacated because the arbitrator's findings of fact concerning the parties' joint venture agreement are erroneous and unsupported by the evidence;

(3) The award should be vacated because procedural irregularities in the arbitration rendered the proceedings fundamentally unfair;

(4) The award should be vacated because the arbitrator was biased; and

(5) The award should be vacated or arbitration proceedings should be reopened because the award does not unambiguously resolve the issues presented to the arbitrator.

The Court will discuss these arguments below, and explain why Plaintiff has failed to meet his burden of proof in showing why one of the statutory or non-statutory bases for vacation has been satisfied. Many of Plaintiff Weinberg's bases for vacation of the award fail because he did not take steps to preserve his rights during the arbitration: the arbitration hearing was not transcribed, he never objected to any procedures employed by the arbitrator, and he has not submitted any evidence that the arbitration was governed by any particular set of rules.

### 1. The Arbitration Agreement is not Void

■ Plaintiff Weinberg's legal theory as to why the arbitration agreement is void is not clear. He argues that since both parties are NFL contract advisors, they are bound by their respective separate agreements with the NFL to adjudicate their agent versus agent dispute before an NFL arbitrator. Notwithstanding this country's worship of professional football, the Court is aware of no authority providing NFL Players Association rules with the independent force of law capable of voiding a private arbitration contract. There is no evidence that the Agreement to Arbitrate was anything other than voluntary.[1] " 'A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act.'" *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis,* 849 F.2d 264, 269 (7th Cir.1988)(quoting *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir. 1964)).

■ Plaintiff also argues that NFLPA authority over disputes between Plaintiff and Defendant and their NFL clients means that the Berman arbitration could not resolve the parties' dispute in a "mutual, final and definite way." He concludes that the award should be vacated pursuant to 9 U.S.C. § 10(a)(4). The Berman arbitration, as agreed by the parties in their arbitration agreement, was an attempt to settle the scope, duration, and clients of the joint venture between them. *See* Agreement to Arbitrate, ¶ 8(A). The fact that no players were parties to the Berman arbitration does not mean that Weinberg and Silber's rights against each other could not be resolved in a full, final, and definite way. Furthermore, there is no evidence that at any time before the arbitrator issued his award, Plaintiff raised the issue that any award would be incomplete or lack finality. As discussed below, such failure to object constitutes a waiver of that potential basis for vacation.

### 2. Erroneous Findings of Fact

■ Plaintiff argues that it was a gross factual error for the arbitrator to have found Stephen Davis a client of the joint venture. To the extent Plaintiff argues that the arbitrator's award fails to draw its essence from the underlying joint venture contract, this Court is in no position to evaluate whether the arbitrator correctly determined the parties' rights under their joint venture agreement. The parties' joint venture agreement was not written, and the parties elected not to transcribe the arbitration hearing at which the parties testified about the joint venture. "When an arbitration award is at issue, the district court does not sit as an appellate court or a court of review, to decide the merits of the grievance or the correctness of the award." *See United Steelworkers of America, AFL–CIO v. Mueller Brass Co.,* 479 F.Supp. 413, 416 (N.D.Miss.1979).

The Court will not engage in Monday morning quarter-backing with respect to the arbitrator's interpretation of the numerous documents and correspondence upon which Weinberg and Silber based their relationship, or his conclusion as to exactly when that extremely contentious relationship finally and legally disintegrated. Likewise, the Court will not re-evaluate Stephen Davis's client status with Plaintiff Weinberg, or whether Davis might have been excluded from the joint venture by any "grandfather clause" that might have been part of the joint venture

---

1. The Court passes absolutely no judgment as to whether NFLPA arbitration would in fact have been available to the parties in this case.

understanding. This is particularly true since Plaintiff has submitted to this Court new affidavits from Stephen Davis that were never submitted to the arbitrator. *See, e.g.,* Stephen Davis Aff., Pl.'s Exh. 29; Second Stephen Davis Aff., Pl.'s Exh. 32.

In the absence of a more extensive written award, which the arbitrator was under no obligation to provide, this Court does not know exactly what the arbitrator's theory of the case was, much less that it was wrong. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (arbitrators have no obligation to explain their decisions). It is precisely to avoid all of this factual second-guessing that the focus of the Court's inquiry in a motion to vacate or confirm is the fundamental fairness of the procedures employed, and not the accuracy of the findings. *See I.U.O.E. Local 347 v. ARCO Chem. Co.,* 979 F.Supp. 1094, 1099 (S.D.Tex.1997)("Rather than burden of proof questions, the proper inquiry for this Court is whether the means used by the arbitrator rise to the level of arbitrariness, capriciousness or fundamental unfairness.").

### 3. *Procedural Irregularities*

#### (a) Procedural Issues

■ Plaintiff's best arguments in favor of vacation pertain to the open-ended nature of the Berman arbitration, and the fact that the arbitrator solicited evidence from the parties about the value of running back Stephen Davis's contract with the Washington Redskins almost six months after the actual arbitration hearing. Section 10(a)(3) of the Federal Arbitration Act provides that vacation may be proper "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the

rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "The type of 'misconduct' covered by this subsection has been construed to mean 'not bad faith,' but 'misbehavior though without taint of corruption or fraud, is born of indiscretion.' " *Maiocco v. Greenway Capital Corp.,* 1998 WL 48557 *5, n. 7 (E.D.Pa. Feb.2, 1998) (citations omitted).

■ Plaintiff first claims that the arbitrator refused to hear evidence "pertinent and material to the controversy." *See* 9 U.S.C. § 10(a)(3); *Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847 (5th Cir.1995)(unfair exclusion of evidence can justify vacatur of award). Plaintiff asserts, and Defendant does not dispute, that the arbitrator did not accept all of the evidence Plaintiff attempted to provide him with on the subject of the nine-year Davis deal. *See* Weinberg Aff., ¶ 60, Pl.'s Exh. 1; Davenport Aff., ¶ 5, Pl.'s Exh. 35. However, Plaintiff has made no attempt to describe the evidence that the arbitrator did not accept, and so this Court has no way of knowing whether such evidence was "pertinent and material" within the meaning of section 10(a)(3). *See Pacific Breakwater West, Inc. v. Wellness Int'l Network, Ltd.,* 2000 WL 276812 *3 (N.D.Tex. March 9, 2000). Plaintiff does not claim that the arbitrator did not accept his explanatory letter of September 18, 2000. *See* 9/18/00 Weinberg letter to Berman, Pl.'s Exh. 16. Arbitrators have a great deal of discretion to exclude evidence as redundant, or otherwise unnecessary to the decision-making process. *See Castleman v. AFC Enterprises, Inc.,* 995 F.Supp. 649, 653 (N.D.Tex.1997)(citing *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir. 1979)). Even assuming that Arbitrator Berman "tore up" a fax submitted by Weinberg on September 23, 2000, *see* Davenport Aff. ¶ 5, Pl.'s Exh. 35, Plaintiff has

failed to meet his burden of proof that Berman improperly excluded evidence that was not within the realm of his discretion to exclude.

■ Plaintiff Weinberg also argues that the arbitrator "exceeded his powers" under section 10(a)(4) by examining the September 2000 Davis contract, which was not even in existence at the time the arbitration hearing occurred. Plaintiff has failed to show that the arbitrator was not authorized to decide the value of Stephen Davis's subsequent major contract with the Washington Redskins. Plaintiff has not provided this Court with any written agreement the parties had with the arbitrator concerning the time frame for his decision, the rules that were to govern his decision-making process, or the scope of the arbitration. However, the Court may look to the parties' arbitration agreement to determine the proper subjects of arbitration. *See Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 213 & n. 2 (5th Cir.1993), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993). If the arbitrator's charge was to settle all issues relating to the joint venture, and he believed that Stephen Davis was a client of the joint venture, then there is no reason why he should not have delayed his decision to ascertain the ultimate value of that client to the joint venture. The agreement to arbitrate states in part, "Gary Berman will hear all complaints and defenses relating to any matters in controversy between Weinberg and Silber as stated in the following: ... (5) The rights, liabilities, obligations and indebtedness of any of the parties to each other with respect to the following: ... (e) Stephen Davis." *See* Agreement to Arbitrate, ¶ 8(B).

■ To the extent Plaintiff argues that the arbitrator exceeded the scope of his power by awarding Defendant "relief not requested," that seems to be undermined by the very exhibit Plaintiff refers to in making that point. *See* Silber's Rule 26(a) Initial Disclosures, Pl.'s Exh. 25. Those disclosures show that Defendant requested one half of the fees received for future contracts on the players listed above. *See id.,* at 10. The list included Stephen Davis. *See id.,* at 9. Furthermore, there is no allegation or evidence to show that the damages summaries the parties provided to the arbitrator were intended to preclude an award of fees on future contracts, the value of which were not yet ascertainable. *See* Silber's Damage Summary, Pl.'s Exh. 26. Weinberg and Silber's Agreement to Arbitrate provided that the arbitration should completely resolve all disputes between them, and should resolve the "rights, liabilities, obligations and indebtedness" of the parties to each other, with respect to a number of athletes, including Stephen Davis. *See* Agreement to Arbitrate, at ¶ 8. The arbitrator's award provides that relief.

■ Plaintiff also has not proved that the arbitrator engaged in "any other misbehavior by which the rights of any party have been prejudiced." This clause, which serves as kind of a catch-all provision in section 10(a)(3), is frequently applied when the arbitrator has run afoul of his or her own rules in conducting the arbitration. *See, e.g., Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 993–94 (3d Cir.1997)(partial vacation proper when arbitrator decided issue he had told parties he would not decide); *Textile Workers Union v. American Thread Co.,* 291 F.2d 894, 898 (4th Cir.1961)(vacation proper where the arbitrator considered evidence he was contractually prohibited from considering). It is impossible to conclude that Berman ran afoul of any rules established for the governance of the arbitration, because neither party has provided any evidence showing what those rules might have been. Certainly there is no evidence to show that

either party ever requested that the arbitrator follow NFLPA arbitration rules, or the rules of any other arbitration association. Broad, otherwise unrestricted arbitration clauses may give arbitrators "the power to do whatever [is] necessary to resolve any disputed matter . . .". *See Valentine Sugars,* 981 F.2d at 213.

■■■ There is no question that the ongoing arbitration process employed in this case was unstructured and far-sweeping. However, "[a]s a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials. Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations." *Forsythe Int'l,* 915 F.2d at 1022 (citations omitted).

**(b) Waiver of Procedural Objections**

■■■■ Even if the arbitrator ran afoul of any provision of the FAA or his agreement with the parties, Plaintiff has not shown that he *ever* objected when the arbitrator questioned the parties and sought information from them about Stephen Davis's nine-year, $135,450,000 deal with the Washington Redskins. If a party does not protest to the arbitrator, courts generally will not give him a second chance to do so in a motion to vacate. *See In re Arbitration Between: Trans Chem. Ltd. & China Nat'l Machinery Import & Export Corp.,* 978 F.Supp. 266, 303 (S.D.Tex.1997), *aff'd and adopted in part by* 161 F.3d 314 (5th Cir.1998); *Gateway Tech., Inc. v. MCI Telecomm. Corp.,* 64 F.3d 993, 998 (5th Cir.1995). " 'It is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.' " *Wellman v. Writers Guild of America, West, Inc.,* 146 F.3d

666, 673 (9th Cir.1998)(quoting *Marino v. Writers Guild of America, East, Inc.,* 992 F.2d 1480, 1484 (9th Cir.1993)); *Brotherhood of Locomotive Engineers, Int'l Union v. Union Pacific Ry. Co.,* 134 F.3d 1325, 1331 (8th. Cir.1998)(holding that parties may waive procedural defects not raised to the arbitrator in an RLA arbitration proceeding); *Order of Ry. Conductors and Brakemen etc. v. Clinchfield R.R. Co.,* 407 F.2d 985, 988 (6th Cir.1969), *cert. denied,* 395 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969); *see also* 4 Am.Jur.2d Alter. Disp. Resolution § 249 (1995)("[A] party may waive its objection to an award by his continued participation in proceedings without objection.").

Plaintiff has not submitted any evidence that he or his attorney objected to the arbitrator's requests for information after the close of the formal hearing, objected to the arbitrator's refusal to accept additional evidence after he received what he wanted, or that they ever objected to a single procedure employed by the arbitrator. As discussed above, failure to object may in itself constitute a waiver. But Plaintiff went further, and actively participated in Arbitrator Berman's September, 2000 proceedings. Plaintiff's letter to the arbitrator on September 18, 2000, seems to have welcomed the opportunity to provide additional explanation of the new Davis contract, stating, "[h]opefully, this submission will assist you in reaching an equitable decision." *See* 9/18/00 Weinberg letter to Berman, Pl.'s App., Exh. 16. Furthermore, it was Plaintiff who apparently first attempted to submit new documentation after the conclusion of the actual hearing. *See* 3/23/00 Carnahan letter to Berman, Pl.'s Exh. 20. Defendant Silber objected to the submission of additional evidence *not requested by the arbitrator,* after the close of the hearing. *See id.* Thus, as early as March, Defendant's attorney raised the possibility that the arbitrator

might validly request additional evidence, and Plaintiff apparently did not object to that possibility at that time, or any time thereafter. Plaintiff's continued participation in subsequent proceedings, without any objection, resulted in a waiver of his right to protest now.

### 4. *No Evident Partiality or Corruption*

■■■ There is no evidence that the arbitrator was partial or corrupt in his administration of the arbitration proceedings, such that vacation is justified under 9 U.S.C. § 10(a)(2). Plaintiff claims that the arbitrator impermissibly relied on "ex parte" evidence. Certainly there is no allegation that the arbitrator solicited information from just one party without telling the other, as was the case in *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, on which Plaintiff relies. 607 F.2d 649 (5th Cir.1979). Instead, Plaintiff claims that the arbitrator heard about the nine-year Davis contract from media reports, and then informed the parties that if they did not supply him with the actual contracts, he would assume that the reports he heard in the media about the value of Davis's contract were accurate. This argument fails to show improper "partiality" for two reasons. First, it is not clear how these events created fundamental unfairness, given that Plaintiff did in fact submit the actual contracts to the arbitrator and there is no evidence that they were not accepted. The arbitrator informed Plaintiff prior to the award being issued that he had heard reports about the Davis contract in the media, and Plaintiff lodged no objection at that time. Second, there is no evidence that the arbitrator actually considered outside evidence in making his award, and no evidence that he ignored the explanatory information requested from, and submitted by, Weinberg. Plaintiff must proffer some evidence of causation between the alleged "ex

parte" communication and the final award to justify vacation of the award on that basis. *See Pacific Breakwater West, Inc.*, 2000 WL 276812 *5 (citations omitted).

Finally, it is eminently clear that a one-sided ruling cannot possibly constitute evidence of improper partiality. The arbitrator was hired to reach a decision. There is no evidence that Mr. Berman had any sort of prior affiliation with Defendant that tainted his partiality.

### C. Remand to Arbitrator

■■■ Finally, Plaintiff argues that there are mistakes in the arbitration award that merit the arbitration being "re-opened," and sent to a new arbitrator. The Court agrees that there are ambiguities in the award relating to its enforceability, as well as errors on the face of the award. Rather than vacating the award and "reopening" proceedings on the merits by sending the case to a new arbitrator, the proper course of action is to remand to the parties' chosen arbitrator for non-merit-based clarification of the award.

■■■ The Fifth Circuit has made clear that when statements or directives in an arbitration award are ambiguous, remand to the arbitrator for clarification is proper. *See San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Div.*, 481 F.2d 821, 825 (5th Cir.1973); *see also Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 333–34 (3d Cir.1991). The Federal Arbitration Act does not have an express provision dealing with remand of commercial arbitration awards to the arbitrators. Instead, "the foundation for a federal court's power to remand an ambiguous arbitration award is the policy in favor of clear final awards that completely resolve the dispute originally submitted to the arbitrator." *Barousse v. Paper, Allied–Industrial*, 2000 WL 1263120 *6 (E.D.La. Sept.6, 2000)(citing *Int'l Bhd. of*

*Elec. Workers v. New England Tel. & Tel. Co.*, 628 F.2d 644, 647 (1st Cir.1980)).

◼ There are three problems with the arbitrator's award in this case that warrant remand for clarification. First, the arbitrator may have misstated the amount Stephen Davis has already paid Plaintiff. Paragraph 9 of the award states that "$3,183,000.00 is an amount already paid to Mr. Weinberg by Stephen Davis, and the amount owed to Mr. Weinberg and Mr. Silber for Steve Davis' salary for the 1999 season." However, paragraph 9 does not award Defendant Silber one half of $3,183,-00, but instead $47,745. The Court suspects that the arbitrator meant that $3,183,000 is the amount that Mr. *Davis*, not Mr. Weinberg, has thus far been paid for the 1999 and 2000 contracts. Ultimately, the misstatement may be of limited impact on the cash award, since Paragraph 9 concludes by directing Mr. Weinberg to pay Mr. Silber $47,745.00. However, the Court directs the arbitrator to correct the statement to reflect that $3,183,000 is the amount that Mr. *Davis* had been paid at the time of the award, if that was in fact the arbitrator's meaning.

Second, there is a double counting problem apparent on the face of the award. In paragraphs 6–8, Berman found that Davis's nine-year deal with the Redskins is worth a total of $135,450,000. The arbitrator ruled that Defendant is entitled to receive half of the three percent fee on that $135,450,000 that Plaintiff will ultimately receive for Davis's 2000 contract. This finding results in an award of $2,031,750 to Silber in paragraph 8 of the award. However, paragraph 9 gives a separate award of $47,745 to Silber, which reflects his share of money already paid to Weinberg under *both* the September 2000 Davis contract and the 1999 Davis contract. Therefore, some of the $47,745 awarded in paragraph 9 appears to overlap with the award in paragraph 8. This Court

has no means of ascertaining the extent of the overlap because the award of $47,745 is not broken down into its component parts. Courts have authority to remand to the arbitrator where there is a clear miscalculation or computational error on the face of the award. *See Laurin Tankers America, Inc. v. Stolt Tankers, Inc.*, 36 F.Supp.2d 645 (S.D.N.Y.1999). The arbitrator should be allowed "to correct obvious error in the translation of its own decision into an award amount." *Id.* at 650 (*quoting Saxis Steamship Co. v. Multifacts Int'l Traders, Inc.*, 375 F.2d 577 (2d Cir.1967)).

Third, there are ambiguities concerning the amount that Plaintiff will ultimately have to pay Defendant. Paragraph 8 states in part, "[t]hus, upon Davis' performance of his contract, and payment made to him by the Washington Redskins, Mr. Weinberg and Mr. Silber will split $4,063,500.00, with not less than $2,031,750.00 net to Mr. Silber." That sentence could be construed as either awarding a sum certain, or an award contingent on the amount Plaintiff Weinberg receives from Stephen Davis. Because the award involves a substantial amount of money that Plaintiff will receive over time, the award must clearly specify under what circumstances, if any, Plaintiff's obligation to pay Defendant would be reduced, and the time frame for payment. For example, will Plaintiff ever owe money to Defendant before it has actually been paid out by Stephen Davis? Does the "not less than $2,031,750" award still apply even if Plaintiff has entered into a separate enforceable contract with another agent (i.e.Mr. Canter) to share fees on the Davis contract? *See* Weinberg Aff. ¶¶ 15–20, Pl.'s Exh. 1. The Court passes absolutely no judgment on the existence of a separate contract with Mr. Canter or whether Mr. Canter is entitled to any Davis fees. But if the arbitrator intends for Weinberg to pay Silber even if such payment results in

a net loss for Weinberg, then the award should so state.

In *Colonial Penn,* the Third Circuit discussed the types of ambiguities that could render a remand for clarification proper. 943 F.2d 327 (3d Cir.1991). The Court stated:

> [A] remand to the arbitrators may be shown not only from the face of the award but from an extraneous but objectively ascertainable fact. Thus, for example, if an arbitration award directed the transfer of real property, and the district court could ascertain that such property was no longer in the possession of the party directed to transfer it, the remedy would be unenforceable and hence ambiguous.

*Id.* at 334. Likewise, in the present case, the arbitrator made an award of property, some of which is not yet in the hands of the party ordered to pay. There are serious questions about the arbitrator's intent with respect to certain contingencies that could diminish the amount to which Plaintiff himself may ultimately receive. "Where questions arise as to how an award should be implemented due to ambiguity in the award or intervening circumstances, judicial enforcement of the award is inappropriate and the matter should be remanded to the arbitrator for guidance." *National Post Office Mail Handlers et al, Division of the Laborers, Int'l Union of North America, AFL–CIO, Local 311 v. United States Postal Service,* 741 F.Supp. 1267, 1269 (N.D.Tex.1990); *see also Green v. Ameritech Corp.,* 200 F.3d 967, 977 (6th Cir.2000); *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL–CIO, CLC, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 847 (7th Cir.1995). In the present case, a remand for clarification is the proper solution.

### III. Conclusion

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Vacate the Award. The Court **DENIES** Defendant's Motion to Confirm without prejudice. The Court **STAYS** the case until such time as a corrected award is presented to the Court with a renewed motion to confirm, or until the parties notify the Court that they have resolved their dispute without the need for further action by the Court. Defendant's Motion for Attorney's Fees and Pre-judgment interest is **DENIED** without prejudice. The Court **REMANDS** this case to arbitrator Gary Berman for the limited purpose of making the three corrections and clarifications discussed above; namely that he:

(1) correct paragraph 9, in which the arbitrator stated that Mr. Weinberg, rather than Mr. Davis, had already received $3,183,000 (unless such was not a misstatement);

(2) correct the double counting error in paragraphs 8 and 9; and

(3) explain under what circumstances, if any, Mr. Weinberg may pay Mr. Silber less than $2,031,750 so that there are not unaddressed contingencies, and explain when such payment(s) shall be due.

However, the arbitrator shall not revisit his decision on the merits, as his authority to do so has expired. *See Colonial Penn,* 943 F.2d at 331–34 (discussing the doctrine of *functus officio* ).

**SO ORDERED.**