INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), and its Local Union No. 1881, by John Taylor, Trustee Ad Litem,

v.

KRAFT FOODS, DIVISION OF KRAFTCO, INC.

Civ. A. No. 76–78.

United States District Court, E. D. Pennsylvania.

Jan. 30, 1976.

Markowitz & Kirschner, Philadelphia, Pa., for plaintiff.

Richard F. Stevens, Butz, Hudders & Tallman, Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The plaintiff, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local Union No. 1881 ("Union"), is seeking a preliminary and permanent injunction to compel the defendant Kraft Foods, Division of Kraftco, Corp. ("Kraft") to proceed with arbitration. A consolidated hearing and trial on the merits has been held pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. For the reasons set forth herein, we believe that the relief requested by the Union should be granted.

Kraft and the Union are parties to a collective bargaining agreement dated July 23, 1975. This agreement was reached after a strike lasting approximately six months. As part of the settlement of the strike, the parties entered into a Memorandum of Agreement which provided that Kraft would provide the Union "with a list of employees who have allegedly engaged in violence and/or other strike or picket line misconduct who will be discharged." The Memorandum of Agreement further provided that the Union will not protest such discharges, "except that the Union

may submit to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association the sole issue of whether the employee participated in violence and/or other strike or picket line misconduct." (Plaintiff's Exhibit 2).

Pursuant to this agreement Kraft supplied the Union with a list of 41 employees who would be discharged, and the Union submitted these discharges to arbitration. Peter Seitz, Esquire, was designated as the arbitrator and hearings were scheduled. The first hearing took place as scheduled on December 15, 1975. At that time a dispute arose between the parties as to the nature of the issue to be resolved by the arbitrator. Nevertheless the hearing continued, with frequent objections to testimony as irrelevant.

Between the first hearing and the second hearing, scheduled for January 5, 1976, Kraft requested by letter to Mr. Seitz that the arbitrator rule that the sole issue to be arbitrated was "participation." (Plaintiff's Exhibit 3). The Union also sent Mr. Seitz a letter stating its position. (Plaintiff's Exhibit 4). Mr. Seitz responded to this correspondence with a letter dated January 3, 1976, explaining his views as to the nature of the issue before him. Mr. Seitz noted that the "sole issue" was indeed whether named employees "participated in violence and/or other strike or picket line misconduct." While evidence not relevant to that issue would be excluded, Mr. Seitz pointed out that the "sole issue" to be arbitrated was not as simple as Kraft seemed to contend, since the arbitrator necessarily would have to determine what the parties intended by terms such as "participation," "violence" and "misconduct." In this regard Mr. Seitz stated that although the words "just cause" are not incorporated in the Memorandum of Agreement, the arbitrator must necessarily consider the extent of an infraction to determine whether it was the kind of misconduct that was intended by the parties to be grounds for dismissal.

The second hearing was scheduled for January 5, 1976, but no testimony was taken at that time. The arbitrator presented to the parties his interim ruling concerning the scope of the issue before him, in the form of his letter of January 3rd. Kraft refused to abide by the arbitrator's ruling, and argued that the parties had not agreed that the arbitrator could decide the question of his own jurisdiction. At this point Mr. Seitz apparently decided that a conclusive and binding decision was not possible if the parties could not agree on the scope of the arbitrator's authority. Consequently, Mr. Seitz refused to proceed on an *ex parte* basis, despite the Union's request that he do so. In light of the breakdown in the arbitration proceedings, the Union then filed this action in the United States District Court.

Jurisdiction of this case is based on section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. It is well settled that federal courts have jurisdiction to compel arbitration of disputes which an employer and a union had agreed to submit to arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Because of the strong federal policy in favor of the peaceful resolution of labor disputes through arbitration, arbitration awards are not disturbed by reviewing courts as long as the arbitrator's interpretation "can in any rational way be derived from the agreement." *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969). See also *NF&M Corp. v. United Steelworkers of America,* 524 F.2d 756 (3d Cir. 1975).

One aspect of the strong preference for an arbitrator's decision is that courts refuse to review the resolution of procedural matters by an arbitrator. In

*John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the United States Supreme Court stated that:

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557, 84 S.Ct. at 918, 11 L.Ed.2d at 909.

The Third Circuit Court of Appeals has explicitly relied upon this holding in several recent cases. See *Controlled Sanitation Corp. v. District 128 of International Association of Machinists and Aerospace Workers et al.,* 524 F.2d 1324 (3d Cir., 1975); *Amalgamated Meat Cutters & Butcher Workmen v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113 (3d Cir., 1975). These decisions are controlling in the instant case.

■ All parties agree, as they must, that the issue before the arbitrator is to determine whether certain named employees "participated in violence and/or other strike or picket line misconduct." As the chosen judge to determine this question, the arbitrator also has the responsibility and the authority to control the conduct of the proceedings and the admission of evidence. He must make all decisions that are necessarily inherent in resolving the issue that the parties have placed before him. Having submitted the dispute to arbitration, Kraft and the Union must abide by the arbitrator's rulings on procedural and evidentiary matters. We believe that the determination of what evidence is relevant to the issue of participation in violence or other strike misconduct is a procedural question which can only be left to the discretion of the arbitrator. We also point out, as did Mr. Seitz, that the issue as framed by the parties in the Memorandum of Agreement—"participation in violence and/or other strike or picket line misconduct"—necessarily must involve questions of justification and other surrounding circumstances.

■ The Union in this case has no adequate remedy at law, and the Union and the discharged employees will be irreparably harmed if the arbitration proceedings are not resumed. Relief therefore will be granted, and an appropriate Order entered.

This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.