**FORSYTHE INTERNATIONAL, S.A.,**
**Plaintiff–Appellant,**

v.

**GIBBS OIL COMPANY OF TEXAS,**
**Defendant–Appellee.**

**No. 89–6148.**

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1990.

James J. Sentner, Jr., Antoninette Van Heugten, Erik G. Heymann, Haight, Gardner, Poor & Havens, Houston, Tex., for plaintiff-appellant.

Barbara Lowe, Susman, Godfrey & McGowan, Houston, Tex., for defendant-appellee.

Before REAVLEY, DUHÉ and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

An arbitration panel awarded appellant Forsythe International, S.A. ("Forsythe") damages for breach of an oral contract by Gibbs Oil Company ("Gibbs"). The district court vacated the award and remanded the cause to a new panel, finding that Forsythe fraudulently procured the award and that the panel was guilty of misconduct for refusing to hear material evidence or act on the allegations of misrepresentation against Forsythe. We reverse the judgment and remand the case to the district court.

## I. FACTS

Gibbs agreed to sell Forsythe approximately 78,000 metric tons of fuel oil. Forsythe intended to resell the oil to the South of Scotland Electric Board ("SSEB"). Gibbs agreed to deliver the oil to SSEB in Scotland. Forsythe's contract with SSEB required a duty-free cargo. The contract between Forsythe and Gibbs did not expressly allocate any responsibility for U.K. duty fees but did require Gibbs to obtain an EUR–1 form to facilitate duty-free passage of the fuel oil through countries of the European Economic Community. An EUR–1 form issues from an exporting EEC-related government, but does not bind the importing country and thus does not guarantee duty-free entrance.

Gibbs shipped the oil to St. Eustatius, Netherlands Antilles, where an EUR–1 form was obtained. The EUR–1 Form obtained by Gibbs was subsequently declared invalid by U.K. customs officials. SSEB charged Forsythe with the customs duty. Forsythe claimed that Gibbs was liable for the customs duty because Gibbs had failed to provide a duty-free cargo. That was the controversy submitted for arbitration.

The three-member arbitration panel, comprised of a representative from each side and a neutral member chosen by the two representatives, heard evidence from both sides. During the proceedings, Gibbs raised an issue of discovery abuse by Forsythe concerning the telephonic deposition of Peter Tap, the former Forsythe employee who had drafted letters of credit underlying the Forsythe–Gibbs oil transaction. The panel did not precisely rule on the issue of discovery abuse, but indicated that it would consider all the evidence before it and would consider any misconduct on the part of Forsythe in its ultimate ruling. The panel majority later rendered a decision for Forsythe.

The panel's decision rested primarily on the actions of Gibbs rather than on the disputed language used by the parties. The term "duty-free" appeared nowhere in pertinent documents between the parties. The parties disputed whether the term "EEC qualified" meant duty-free. The panel bypassed the semantic dispute, noting only that various contract amendments had not expressly abolished duty-free status. The panel concluded that the series of events, from Gibbs' loading in Houston to its deviating via St. Eustatius, supported its decision that "Gibbs always was well aware of the DUTY–FREE requirement by Forsythe." Had the parties not intended duty-free delivery, the panel determined, "Gibbs had no reason to decide to send the cargo from Houston to St. Eustatius."

After the panel decision, Forsythe asked the district court to confirm the award and Gibbs petitioned to have the award vacated or modified. The district court initially issued a Memorandum and Order, deferring a ruling on the parties' motions and ordering further briefing on the issues of Tap's deposition and interest payments on the award. After the additional briefing, the court found that "the actions and representations of Forsythe during pre-hearing discovery and the arbitral panel's response or lack of response thereto so seriously undermined the arbitral process and award as to require the vacatur of the award." The court found satisfactory grounds for vacatur under 9 U.S.C. § 10(a), which addresses award procurement by "corruption, fraud, or undue means," and 9 U.S.C. § 10(c), which addresses panel misconduct that prejudices the rights of a party. The court found that Forsythe's actions and misrepresentations amounted to "corruption, fraud, or undue means, and ... the panel's refusal to take any action in that regard amounted to (i) the refusal to hear pertinent and material evidence and to (ii) misbehavior that prejudiced the rights of Gibbs." The court vacated the award and remanded the cause to a new panel. Forsythe brought this appeal. We decide that the necessarily limited judicial review of the arbitration award yields no justification for disturbing it. We reverse and remand.

## II. DISCUSSION

### A. Appellate Jurisdiction

■ Appellee Gibbs contests our jurisdiction, arguing that the district court's vaca-

tur and remand to a different arbitration panel compel further arbitration and therefore constitute an unappealable interlocutory order. We disagree.

The statute that governs appellate jurisdiction of district court decisions in arbitration cases authorizes an appeal from an order vacating an arbitration award, 9 U.S.C. § 15(a)(1)(E), or from "a final decision with respect to an arbitration," 9 U.S.C. § 15(a)(3), but prohibits appeal from interlocutory orders directing or permitting arbitration to proceed, 9 U.S.C. § 15(b). The statute does not address the appealability of an order of remand.

Section 15 embodies the federal policy promoting arbitration by permitting interlocutory appeals of orders favoring litigation over arbitration and precluding review of interlocutory orders that favor arbitration. *United Offshore Co. v. Southern Deepwater Pipeline Co.,* 899 F.2d 405, 407 (5th Cir.1990). Accordingly, this court has twice held that orders staying judicial proceedings and ordering arbitration are not appealable. *Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 867 F.2d 1518, 1521 (5th Cir.1989); *Jolley v. Paine Webber Jackson & Curtis, Inc.,* 867 F.2d 891, 892 (5th Cir.1989). This is not such a case.

While the district court's order commanded further arbitration, it also nullified the decision of an arbitration panel. If an order remanding the case to a different arbitration panel[1] renders a vacatur unreviewable, parties to arbitration could never determine whether the district court acted within the narrow statutory limits governing vacatur of the original award. Such a result would disserve the policies that promote arbitration and restrict judicial review of awards. Where the district court has vacated an award and ordered new arbitration by a different panel, its vacatur becomes reviewable pursuant to 9 U.S.C. § 15(a)(1)(E).

*B. The Standard of Review*

 "Judicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 413 (5th Cir.1990). Specifically, judicial review of a commercial arbitration award is limited to Sections 10 and 11 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq. Moseley, Hallgarten, Estabrook & Weeden v. Ellis,* 849 F.2d 264, 267 (7th Cir.1988). Accordingly, a district court has no authority to vacate an arbitration award unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a)–(d). The district court vacated the Forsythe award on grounds (1) and (3).

 In reviewing the district court's vacatur, we posit the same question addressed by the district court: whether the arbitration proceedings were fundamentally unfair. *See Teamsters, Local Union 657 v. Stanley Structures, Inc.,* 735 F.2d 903, 906 (5th Cir.1984). We review the district court's conclusion de novo, which is consistent with this circuit's holdings in the arbitration context. *See, e.g., Folger Coffee Co. v. International Union, Local 1805,* 905 F.2d 108, 110–12 (5th Cir.1990) (implicitly reviewing de novo whether award drew essence from collective bargaining agreement); *Antwine,* 899 F.2d at 412–13 (implicitly reviewing de novo district court's refusal to vacate award based on panel's alleged noncompliance with securities arbitration rules); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 602 (5th Cir.1989) (expressly reviewing de novo whether award grounded in collective bargaining agreement), *cert. denied,* —— U.S. ——, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990);

---

1. Had the district court remanded to the same arbitration panel for clarification of its award, the policies disfavoring partial resolution by arbitration would preclude appellate intrusion un-

til the arbitration was complete. *See Hanford Atomic Metal Trades Council, AFL–CIO v. General Elec. Co.,* 353 F.2d 302, 307–08 (9th Cir.1965).

*Container Products, Inc. v. United Steel-workers of Am.*, 873 F.2d 818, 819 (5th Cir.1989) (implicitly reviewing de novo whether arbitrator exceeded his authority).

Gibbs urges application of *Pullman Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), wherein the Supreme Court compelled application of the "clearly erroneous" standard to *all* factual issues and erased the distinction cultivated in this circuit[2] between ultimate and subsidiary facts. *Id.* at 287, 102 S.Ct. at 1789. The issue of arbitral fairness is not, however, the kind of "ultimate fact" that properly triggers *Swint.* Fraudulent procurement of an award and panel misconduct, as ultimate conclusions, may mingle factual and legal issues, but the *Swint* Court expressly exempted from its analysis these "mixed questions of law and fact ... [where] the issue is whether the facts satisfy the statutory standard, or ... whether the rule of law as applied to the established facts is or is not violated." *Id.* at 289 & n. 19, 102 S.Ct. at 1790 & n. 19. The issue we review—whether the district court properly applied the statutory standard for vacating the award—is precisely such a question and properly reviewed de novo.

In adopting de novo review here, we emphasize the unique context of arbitration, which conditions judicial review by compelling deference to findings that precede the district court. We decline Gibbs' invitation to affirm the district court unless its ruling constitutes an abuse of discretion.[3] In the arbitration context, granting the deference ordinarily due the district court risks forgetting the prior and critical deference due the findings of the arbitration panel. De novo review on the ultimate issue of unfairness enables us to assess whether the district court accorded sufficient deference in the first instance, an assessment that a more restrictive appellate review would cripple. *Cf. United Offshore Co.*, 899 F.2d at 407 (preliminary injunction typically re-viewed under abuse of discretion standard, but order enjoining arbitration compels de novo review as more consistent with federal policy promoting arbitration).

We do not thereby wish to become a kind of clemency board for misconduct which district courts rightly condemn. We merely ask here whether the panel discharged its duty as measured by the more modest procedural and evidentiary strictures of arbitration. We believe that it did for reasons detailed below.

### C. The Merits of the Vacatur

Gibbs contends, and the district court agreed, that the arbitration panel fatally compromised its award by failing to address more thoroughly the allegations of Forsythe's misconduct. The district court based its holding on the allegations that (1) Forsythe misrepresented to the panel that Mr. Peter Tap was an employee of Forsythe when in fact he was a former employee; (2) this misrepresentation allowed Forsythe to control the availability of Tap and to interfere with the questioning of Tap during a telephonic deposition; (3) Forsythe imposed an arbitrary time limit on Tap's deposition; and (4) Forsythe misrepresented, whether intentionally or not, Tap's medical condition,[4] which enabled Forsythe to terminate the telephonic interview prematurely.

The parties disputed the nature and significance of these actions at length, before the panel, before the district court, and before this court. The district court concluded that "the panel simply preferred not to address these issues at all, ... [which] rendered the arbitration proceedings unfair to Gibbs." While the arbitration panel did conduct hearings on most of Gibbs' allegations, we may concede the premise of inattention and still reject the inference of fundamental unfairness.

---

**2.** *See Swint*, 456 U.S. at 286 n. 16, 102 S.Ct. at 1789 n. 16.

**3.** *See Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir.1988) (reviewing district court's refusal to vacate award under abuse of discretion standard).

**4.** During oral argument, counsel for Forsythe disclosed that Tap was deceased. Whether or not Forsythe's medical representations thus become more credible, we do not base any aspect of our reversal on the possibility that Tap's death moots the dispute.

■■ As a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953).[5] Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.*, 20 F.R.D. 359, 362 (S.D.N.Y.1957). The informal nature of arbitration proceedings effectuates the national policy favoring arbitration, and such proceedings require "expeditious and summary hearing, with only restricted inquiry into factual issues." *Legion Ins. Co. v. Insurance General Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987), quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983).

■ Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial. But because "the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him." *Fairchild & Co., Inc. v. Richmond, F. & P. R.R.*, 516 F.Supp. 1305, 1313 (D.D.C.1981). Thus, whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so.

■ The statute does not provide for vacatur in the event of any fraudulent con-

duct, but only "where the *award was procured* by corruption, fraud, or undue means." 9 U.S.C. § 10(a) (emphasis added). We read this language as requiring a nexus between the alleged fraud and the basis for the panel's decision. *Cf. Bonar*, 835 F.2d at 1383 (requiring clear and convincing evidence of fraud, due diligence in discovering it, and material relation of fraud to issue in arbitration); *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.) (same requirements; noting that "in order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud"), *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). The requisite nexus may exist where fraud prevents the panel from considering a significant issue to which it does not otherwise enjoy access. But where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent.

■ The record indicates that the panel (1) heard argument on the allegations of fraud; (2) received the evidence from Peter Tap in his one deposition; (3) declared that it would consider all the evidence before it, including the allegations of fraud, in rendering its decision; and finally (4) rendered a decision that rested on the parties' intent as measured by their actions, and not on the language dispute that Tap's testimony merely protracted.[6] *See Delta Queen*, 889 F.2d at 602 (arbitrator may look beyond writings to interpret contract where instrument is ambiguous or silent on precise question). The panel effectively ruled that

---

5. *Wilko v. Swan* was overruled on other grounds in *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In *Rodriguez*, the Supreme Court noted *Wilko*'s expressed "suspicion of arbitration as a method of weakening the protections afforded in the substantive law," and based its reversal on the extent to which that decision had "fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.* 109 S.Ct. at 1920.

6. The district court, in an earlier memorandum and order dismissing certain grounds for vacatur advanced by Gibbs, noted that "the panel made abundantly clear that its decision was not based upon the disputed language used by the parties or Gibbs' intentions in changing the language. Rather the panel's award was based upon the parties' intent. The panel implicitly found that Gibbs' later insistence upon changes in wording did not alter that term of the oral contract providing for the duty-free entry of the cargo."

the asserted fraud issue was immaterial.[7] In these circumstances, whatever justification may exist for condemning Forsythe's conduct,[8] such condemnation cannot rightly extend to the arbitral award.

We find no particular statutory basis for attacking the propriety of the panel's action in deeming the disputed Tap issue irrelevant to its determination of the merits. "The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985). An evidentiary error "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968). The panel's impatience with further proceedings on the allegations of Forsythe's misconduct did not constitute the kind of fundamental error necessary for a finding that Gibbs was deprived of a fair hearing.

If the arbitrators' decision rests on an adequate basis, then complaints that the panel failed to address all issues presented will not render the proceedings "fundamentally unfair" or justify disturbing the award. *Stanley Structures*, 735 F.2d at 906; *see also International Union UAW v. Kraft Foods, Div. of Kraftco, Inc.*, 409

F.Supp. 559, 562 (E.D.Pa.1976) (decisions as to relevance and admissibility of evidence belong to arbitrators alone); *Fairchild*, 516 F.Supp. at 1314 ("every failure to receive relevant evidence does not constitute misconduct under the Act so as to require vacation of the award"); *Asiatic Petroleum Corp. v. New England Petroleum Corp.*, 65 A.D.2d 708, 410 N.Y.S.2d 91, 92 (N.Y.App.Div.1978) (arbitrators not guilty of misconduct for failure to enforce subpoenas duces tecum because panel bottomed its ruling on interpretation of contract which could not be disturbed even if erroneous), *appeal denied*, 47 N.Y.2d 705, 417 N.Y.S.2d 1025, 390 N.E.2d 1182 (1979). Because the panel interpreted the contract, as it was empowered to do, on a basis that rendered Tap's testimony irrelevant, it did not fundamentally err in declining further action on that issue.

### III. ORDER

We reverse the district court's vacatur of the arbitration award. The calculation of damages was disputed below, but never resolved because the district court vacated the entire award and remanded the cause to a new arbitration panel. We therefore remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

7. The panel did not expressly rule that the allegations of Forsythe misconduct were immaterial. They deferred the issue for consideration within the larger context of the merits. The neutral arbitrator, however, expressed impatience with protracted diversion from the merits, and at one point termed the Tap issue "peripheral." The majority opinion dispatched the merits consistent with the neutral arbitrator's view of the "peripheral" Tap issue. The Gibbs-appointed arbitrator wrote a dissenting opinion. His comprehensive rendering of fact and law notably failed to mention the Tap dispute. He did express concern in an earlier letter delivered to the other panel members, but declined the opportunity to designate the Tap issue "material" in his lengthy dissent.

8. The record discloses that Forsythe's conduct created at least an unsavory appearance. Nothing in this opinion should encourage the notion that "anything goes" in arbitration. We merely reject the district court's remedy as inconsistent with the judicial deference accorded the arbitration process. Misconduct, even when deemed irrelevant to the merits, may nevertheless subject offenders to other sanctions. Arbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process. *See Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 246 (E.D.N.Y.1973).