COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 9, 2021
Date Decided: May 28, 2021

Garrett B. Moritz, Esquire
Elizabeth M. Taylor, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Kevin M. Gallagher, Esquire
Angela Lam, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

RE:  *Roma Landmark Theaters, LLC et al. v. Cohen Exhibition Company LLC*,
C.A. No. 2019-0585-PAF

Dear Counsel:

Plaintiffs Roma Landmark Theaters, LLC and MCC Entertainment LLC

(together "Plaintiffs" or "Sellers") have filed a Renewed Motion for Summary

Judgment (the "Motion") against Defendant Cohen Exhibition Company LLC

("Defendant" or "Buyer") for confirmation of an arbitration award (the

"Determination Letter").[1]  Through the Motion, Plaintiffs seek an order granting

summary judgment in their favor and directing Defendant to pay the amount

awarded to Plaintiffs pursuant to the Determination Letter, plus interest and their

---

[1] Unless noted otherwise, capitalized terms are as defined in the Court's September 30, 2020 Memorandum Opinion (the "Opinion" or "Op."). The Determination Letter is attached as Exhibit B to the Complaint.

costs and expenses incurred in pursuing enforcement of the Determination Letter.

Plaintiffs also seek to compel Buyer to execute a Joint Instruction Letter authorizing

the release of funds from an escrow account for the award, and to pay any amount

in excess of the award in the event the escrow is not sufficient to satisfy the award.

This letter opinion resolves the Motion.

## I.      Factual Background

### a.    The Acquisition and the Determination Letter

On December 3, 2018, Sellers sold the Company to the Buyer.  The terms of

the sale are contained in a Purchase Agreement and related Escrow Agreement.[2]

Through the Escrow Agreement, $3 million of the purchase price was placed into an

escrow account to cover post-closing purchase price adjustments.  The Purchase

Agreement defined a process through which the parties would calculate post-closing

purchase price adjustments.  The Purchase Agreement incorporated and attached

Applicable Accounting Principles and a Sample Statement to guide the parties'

calculations.  If the parties could not resolve a dispute over post-closing purchase

price adjustments, the Purchase Agreement required the parties to select an

independent accounting firm to decide the dispute.  The accounting firm's review

---

[2] The Purchase Agreement is attached as Exhibit A to the Complaint.  The Escrow Agreement is attached as Exhibit C to the Complaint.

was limited to determining whether calculations had been correctly performed and whether the calculations were made pursuant to the Applicable Accounting Principles and the Sample Statement. The parties agreed that the accounting firm's determination would be "conclusive and binding upon the parties" and would not be "subject to appeal or further review."[3] The parties agreed that they would pay the costs of "any dispute resolution . . . including the fees and expenses of the Independent Accounting Firm and of any enforcement of the determination thereof" proportionally to the degree of their success, as calculated by the accounting firm.[4]

The parties disputed the post-closing price adjustments and engaged PricewaterhouseCoopers LLP ("PwC") to serve as the independent public accounting firm. PwC obtained additional information through interrogatories and document requests to the parties. On June 28, 2019, PwC resolved the price adjustment disputes and documented its decision in the Determination Letter. By its terms, the Determination Letter became final five business days later.[5] The Determination Letter resolved the disputes in Sellers' favor, except that PwC agreed with Buyer's calculation of the Company's cash as of the closing date.

---

[3] Purchase Agreement § 1.3(d).

[4] Purchase Agreement § 1.3(e).

[5] *See* Determination Letter 15.

Based on the Determination Letter, Plaintiffs calculate that they are entitled to $2,621,623 from the escrow. *See* Compl. ¶¶ 23–26 & Ex. E. Plaintiffs requested that Buyer execute a Joint Instruction Letter releasing that amount, and Buyer refused.

**b.    This Action and the Memorandum Opinion.**

On July 29, 2019, Plaintiffs filed the Complaint seeking (1) a judgment enforcing the Determination Letter as a binding arbitration award under the Federal Arbitration Act (Compl. Count I) and (2) an order of specific performance requiring Buyer to release the escrowed amounts pursuant to the Determination Letter (Compl. Count II).    On September 12, 2019, Buyer filed an Answer and Verified Counterclaims (the "First Pleading"). As its fourth affirmative defense, the Answer in the First Pleading cited the Delaware Uniform Arbitration Act (the "DUAA") and averred that the "Award must be vacated under 10 *Del. C.* § 5714(a)(5) as the agreement to arbitrate had not been complied with." Dkt. 10 at 21. Count II of the Verified Counterclaims asserted a claim for vacatur of the Determination Letter under the same statute. *Id.* ¶¶ 32–35.

On October 2, 2019, the Plaintiffs filed a motion to dismiss the counterclaims and for summary judgment, and on December 2, 2019, they filed their opening brief in support of both motions. Among the grounds for summary judgment, Plaintiffs

argued that Defendant erroneously sought to vacate the Award under the DUAA because the Award is governed by the FAA. Plaintiffs also pointed out that the section of the DUAA cited in the Answer was not one of the four enumerated grounds to vacate an award under the FAA. On January 13, 2020, Buyer responded to Plaintiffs' opening brief in support of the motions by filing (1) an "Answer and Verified Amended Counterclaims," (Dkt. 24) (the "Second Pleading") and (2) an opening brief in opposition to Plaintiffs' motion for summary judgment.

The Answer in the Second Pleading is not denominated as an "Amended" Answer. The affirmative defense section in the Answer in the Second Pleading, however, is different from that of the Answer in the First Pleading in the following respects: it renumbered the Affirmative Defenses, deleted the affirmative defense asserting that the Determination Letter should be vacated under the Delaware Uniform Arbitration Act, and added as a new, fifth affirmative defense that the "Award must be vacated under the FAA, 9 U.S.C. § 10(a)(1), because the Award was procured by corruption, fraud or undue means." *See* Dkt. 24 at 21. Like the Answer in the First Pleading, the Answer in the Second Pleading did not contain any factual allegations that the Determination Letter was procured by fraud.

Unlike the Counterclaims in the First Pleading, the Amended Counterclaims in the Second Pleading did not assert a claim to vacate the Determination Letter.

Because the Buyer amended its counterclaims, Sellers filed a new motion to dismiss the Amended Counterclaims, and the parties completed a full round of briefing regarding the new motion to dismiss.[6]

The parties did not, however, conduct a full round of new briefing on Plaintiffs' motion for summary judgment to confirm the Award. Instead, on April 27, 2020, Plaintiffs filed a reply brief in support of the motion for summary judgment. Because Buyer filed the Second Pleading in the middle of briefing on Plaintiff's motion for summary judgment, Plaintiffs were required to adjust their aim at a moving target. In their opening brief, Plaintiffs had argued, among other things, that Buyer had "mistakenly moved for vacatur under Section 5724(a)(5) [sic] of the DUAA." Dkt. 19 at 39. Because the Buyer's Second Pleading dropped the counterclaim for vacatur of the Award under the DUAA and the Answer cited vacatur under the FAA rather than the DUAA as an affirmative defense, Plaintiffs' reply brief, for the first time, argued that Buyer had not filed a timely motion to

---

[6] Because Buyer was confronted with a motion to dismiss the Counterclaims in the First Pleading, Buyer contends it was permitted to file the Second Pleading without seeking written consent of Plaintiffs or leave of court under Rule 15(aaa) (permitting a party to "respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading" by filing an "amended complaint, or a motion to amend . . . no later than the time such party's answering brief" is due in response to the motion to dismiss); *but see* Ct. Ch. R. 15(a) (requiring written consent of the opposing party or leave of court to file an amended pleading after a party can no longer amend its pleading as of right).

vacate within three months of the Determination Letter, as required by the FAA. Dkt. 36 at 3–7. Plaintiffs further argued that none of Buyer's pleadings satisfied the requirements to vacate the Award under the FAA. *Id.*

On September 30, 2020, the Court issued a Memorandum Opinion granting and denying Sellers' motion to dismiss in part. As to Plaintiffs' motion for summary judgment, the Court observed that there was a material issue of fact preventing entry of summary judgment because it was possible that certain liabilities were fraudulently omitted "from the Interim Financial Statements [that] formed part of the calculations relied upon by PwC in its Determination Letter." Opinion at 51–52. The Court further observed that the issue of whether Buyer had timely filed a motion to vacate the Determination Letter "arose in an awkward procedural context due to the Buyer's filing of amended counterclaims and altering its legal theory" after the opening brief in support of summary judgment, which caused Plaintiffs to raise its timeliness argument for the first time in their reply brief. *Id.* at 52 n.87. The Court therefore "conclude[d] that the Buyer should be permitted to appropriately address the procedural challenge to its attempt to vacate the Determination Letter" under the FAA. *Id.* The Court thus denied the motion for summary judgment without prejudice. *Id.* at 52.

On November 20, 2020, Plaintiffs filed a renewed motion for summary judgment. The parties briefed the renewed motion, and the Court heard oral argument on February 9, 2021.

## II. Analysis

### a. Buyer Did Not Provide Notice of a Motion to Vacate the Determination Letter as Required by the FAA.

The parties do not dispute that the Determination Letter is an arbitration award that is governed by the terms of the FAA. Under the FAA, to vacate an arbitration award, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The Determination Letter was "filed or delivered" on June 28, 2019 and became final five business days later. Thus, at the latest, Buyer was required to serve a notice of motion to vacate, modify, or correct the Determination Letter no later than October 6, 2019.

Defendant contends it was not required to file a notice of motion, pointing to Section 6 of the FAA, which provides that any application to a court must be "made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." *Id.* § 6. Defendant argues that its Answer and Verified Counterclaims, served on September 12, 2019, are sufficient

to serve as a motion to vacate under the FAA. Buyer's Answer contained an affirmative defense averring that the "Award must be vacated under 10 *Del. C. §* 5714(a)(5) as the agreement to arbitrate had not been complied with." Dkt. 10 at 21. In addition, Count II of the Verified Counterclaims asserted a claim for vacatur of the Determination Letter. *Id.* ¶¶ 32–35. Like the Answer, the Verified Counterclaims only sought to vacate the Award under the same provision of the DUAA. *Id.* ¶ 34. Buyer does not contend that it provided notice of a motion to vacate under the FAA other than through its filings in this action.

Under Court of Chancery Rule 7(b), no notice of a motion is required. Court of Chancery Rule 7(b) provides that "[a]n application to the Court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing, shall state with particularity the grounds therefor, and shall set forth clearly in the motion the relief sought. The party making the application shall not file a separate notice of motion." Ct. Ch. R. 7(b).

Plaintiffs argue that neither the First Pleading nor the Second Pleading is sufficient to satisfy the FAA's requirement of a timely notice of a motion to vacate. Plaintiffs contend that pleadings and affirmative defenses cannot be deemed equivalent to a motion to vacate, *see* Ct. Ch. R. 7(a) (listing an answer as a pleading); Ct. Ch. R. 13 (requiring counterclaims to be stated in the pleading), and that Buyer's

affirmative defense and counterclaims in the First Pleading invoked the DUAA, rather than the FAA. Dkt. 10 at 21 & 33–34.[7]

Federal courts applying the FAA have discretion to determine that a pleading or other application for vacatur is equivalent to a motion.[8] There are strong policy reasons not to do so. As the United States District Court for the Southern District of New York has held, the FAA's requirement of a motion to vacate ensures that the burden of proof properly remains on the party seeking vacatur. *See Kruse*, 226 F. Supp. 2d at 487 (holding that a petition to vacate was untimely because it was not a motion to vacate and noting that, if a party could seek vacatur via pleading, "[t]he

---

[7] Not only did Buyer improperly invoke the DUAA, but it also cited grounds to vacate under the DUAA that are not recognized by and have no equivalent under the FAA. *Compare* 10 *Del. C.* § 5714(a)(5) ("There was no valid arbitration agreement, or the agreement to arbitrate had not been complied with, or the arbitrated claim was barred by limitation and the party applying to vacate the award did not participate in the arbitration hearing without raising the objection"), *with* 9 U.S.C. § 10(a)(1)–(4) (containing no similar provision).

[8] *See Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 486–87 (S.D.N.Y. 2002) (discussing the policy that motions should not be deemed equivalent to pleadings for purposes of seeking vacatur and holding that "[a] party cannot initiate a challenge to an arbitration award by filing a complaint or an application"); *Questar Cap. Corp. v. Gorter*, 909 F. Supp. 2d 789, 803 (W.D. Ky. 2012) (discussing the discretionary determination to treat a pleading as a motion and noting that "the clear intent" of the FAA "was to remove confirmation and vacatur procedures . . . from the ambit of pleadings and their attendant rules of civil procedure" in order to preserve the summary disposition of vacatur proceedings). *See also O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 746 (11th Cir. 1988) (holding that the "erroneous nomenclature" of a complaint was immaterial because the briefing "adequately briefed the issue of whether the arbitration award in question should have been vacated").

burden would be on Petitioner to show that Respondents could not prove any facts that would entitle them to relief from the Award. This is contrary to the FAA and basic principles of fairness.") (internal citations omitted); *see also O. R. Sec., Inc.*, 857 F.2d at 745 ("The manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceedings affects the burdens of the various parties."). Addressing the applicability of the disparate and discretionary applications of this rule is not necessary here, however, because the affirmative defenses in the First and Second Pleadings were deficient as a matter of Delaware law.

The First Pleading asserted an affirmative defense for vacatur and a counterclaim for vacatur under the DUAA, the latter of which was later withdrawn through the Second Pleading. *See* Dkt. 10. The affirmative defense seeking vacatur in the First Pleading avers, in its entirety, that "[t]he Award must be vacated under [the DUAA] as the agreement to arbitrate had not been complied with." Dkt. 10 at 21. The affirmative defense was not supported by any factual allegation. The affirmative defense in the First Pleading seeking vacatur was not supported by any well-pleaded fact, as required by Delaware law. Under Delaware law, "affirmative defenses must be supported by pled facts." *Cypress Assocs., LLC v. Sunnyside Cogeneration Assocs. Project*, 2007 WL 148754, at *18 (Del. Ch. Jan. 17, 2007);

*accord Leaf Invenergy Co. v. Invenergy Wind LLC*, 2016 WL 3566365, at \*3 (Del. Ch. June 30, 2016) (holding that a conclusory affirmative defense was insufficient to warrant denial of motion for judgment on the pleadings); *Di Loreto v. Tiber Hldg. Corp.*, 1999 WL 1261450, at \*4 n.9 (Del. Ch. June 29, 1999) (dismissing conclusory affirmative defenses); *Kurz v. Holbrook*, 2009 WL 4682622, at \*6 (Del. Ch. Dec. 1, 2009) (dismissing an unclean hands defense because it was alleged "in conclusory fashion without providing any supporting allegations," and holding that "[t]he rote recitation of an unclean hands defense is not a free pass to conduct discovery"); *see also Shechter v. Comptroller of City of New York*, 79 F.3d 265, 268 (2d Cir. 1996) ("Affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.") (internal citations omitted). At best, Count II of the Buyer's Counterclaim alleged a violation of the DUAA and that "[t]he Purchase Agreement has not been complied with, in that the Counterclaim Defendants failed to abide by the good-faith requirement of Section 1.3 of the Purchase Agreement, by omitting material information from the Sample Statement in bad faith." *Id.* at 33. This bare allegation did not provide notice that Buyer would seek to vacate the Determination Letter under the FAA on the grounds that the Determination Letter was "procured by corruption, fraud, or undue means."

9 U.S.C. § 10(a)(1).[9] The affirmative defense in the First Pleading was therefore not an adequate substitute for notice of a motion to vacate under the FAA because it cited the wrong statute, did not provide notice of the eventual fraud defense asserted under the FAA, and was insufficient as a matter of Delaware law.

Buyer argues that the amended affirmative defense in the Second Pleading seeking vacatur under the FAA relates back to the date of its original pleading. As Buyer observes, federal courts have permitted parties to amend motions to vacate to assert new theories of vacatur after timely notice of a motion to vacate. But Buyer's argument fails because the Second Pleading is just as conclusory as the First Pleading. *See* Dkt. 24 at 21 (averring that the Determination Letter "must be vacated under the FAA, 9 U.S.C. § 10(a)(1), because the Award was procured by corruption, fraud or undue means"). The affirmative defense seeking vacatur in the Second Pleading is, like the affirmative defense in the First Pleading, unsupported by any pleaded fact. It merely cites and quotes a portion of the statutory provision. Thus,

---

[9] PwC was not authorized to address whether Sellers engaged in pre-arbitration fraud by omitting information from the Sample Statement. The Purchase Agreement provides that the "scope of the disputes to be resolved by the Independent Accounting Firm shall be limited to correcting mathematical errors and determining whether the items and amounts in dispute were determined in accordance with the Applicable Accounting Principles and the Sample Statement, and the Independent Accounting Firm is not to make any other determination." Purchase Agreement § 1.3(d).

even if the Second Pleading related back to the date of the First Pleading, the affirmative defense in the Second Pleading was not sufficient to provide notice of a motion to vacate as required by the FAA because it was deficient as a matter of Delaware law.

Buyer relies on *M3 Healthcare Solutions v. Family Practice Associates, P.A.*, 996 A.2d 1279 (Del. 2010), to support its position that it has effectively moved to vacate the Determination Letter under the FAA by asserting vacatur in its affirmative defenses. In *M3 Healthcare*, the Delaware Supreme Court held that an "application" to vacate an arbitration award under the Delaware Uniform Arbitration Act "may be raised in an answer to a complaint to confirm the award," including by "listing 'affirmative defenses' that requested modification, vacation or correction of errors in the arbitration award." *Id*. at 1283. Buyer argues that, because "the assertion of affirmative defenses or counterclaims is sufficient for purposes of making an 'application' under the DUAA," "[t]he same should be true for purposes of making a 'notice of motion to vacate' under the FAA." Def.'s Answering Br. 18.

Buyer's argument fails for two reasons. First, in *M3 Healthcare*, the party seeking vacatur provided factual allegations in support of its affirmative defense seeking to vacate an arbitration award. In *M3 Healthcare*, the party seeking vacatur averred, as an affirmative defense, that the arbitration award should be vacated under

the DUAA because the arbitrator improperly permitted a "previously unidentified witness" to testify, that such witness offered testimony regarding "purported internal working guidelines of Blue Cross/Blue Shield," and that the witness had not been required to "produce the internal guidelines for use during cross-examination." *Family Practice Assocs., P.A., v. M3 Healthcare Solutions*, C.A. No. 4488-VCS, Dkt. 6 ¶ 19. By contrast, Buyer's affirmative defense here is facially inadequate and more closely resembles the pleading deemed untimely in *Kruse*, where the "paragraphs relevant to the petition's substance" contained "only conclusory statements" and were "devoid of any argument or factual or legal support." *See Kruse*, 226 F. Supp. 2d at 486. Buyer cannot forestall confirmation of the Determination Letter indefinitely on the basis of a conclusory affirmative defense.

Second, the FAA and the DUAA do not contain interchangeable language regarding the procedural requirements to timely vacate an arbitration award. The DUAA permits a party to seek vacatur "[u]pon complaint or application of a party in an existing case" and permits "[a]n application under this section . . . within 90 days after delivery of a copy of the award to the applicant." 10 *Del. C.* § 5714. By comparison, the FAA requires "[n]otice of a motion to vacate, modify, or correct an award" to be "served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The FAA is narrower than the

DUAA, which expressly permits a party to seek vacatur through a "complaint or application . . . in an existing case." 10 *Del. C.* § 5714. As previously noted, the parties do not dispute that the FAA applies to the Determination Letter. Superimposing the requirements of the DUAA over the FAA is not appropriate merely because Buyer initially sought to vacate the Determination Letter under the wrong statute. Buyer's belated and ineffective invocation of the FAA therefore does not cure its failure to provide notice that it would affirmatively move to vacate the Determination Letter in the first instance.

As a final argument, Buyer asserts that this Court may set aside the timeliness requirements of the FAA altogether, and argues that "each state is free to apply its own procedural requirements so long as those procedures do not defeat the purposes of the [FAA]." Def.'s Answering Br. 18–19 (quoting *TowerHill Wealth Mgmt., LLC v. Bander Family P'ship, L.P.*, 2008 WL 4615865, at *1 n.3 (Del. Ch. Oct. 9, 2008)); *see also* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."). *TowerHill* involved a different section of the FAA that concerned application for an interlocutory appeal. The FAA provides that "[a]n appeal may be taken from . . . an interlocutory order granting . . . an injunction against an arbitration." 9 U.S.C. § 16. In *TowerHill*, the court held that

the FAA cannot be read so broadly as to require the Court of Chancery to certify an interlocutory appeal. *TowerHill* does not require the court to disregard the language of the FAA. In any event, as discussed above, the affirmative defenses seeking to vacate the Award lacked factual support and were inadequate under Delaware law and, therefore, cannot be deemed a timely motion to vacate.

For the foregoing reasons, the First and Second Pleadings did not timely provide notice of a motion to vacate under the FAA, and the motion for summary judgment will be granted.

> **b.      Buyer Has Not Demonstrated that There Is a Material Issue of Disputed Fact Requiring Denial of the Motion.**

Under Court of Chancery Rule 56, summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ct. Ch. R. 56(c). "A motion for summary judgment is the 'common [method] for this court to determine whether to vacate or confirm an arbitration award.'" *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 730 (Del. Ch. 2008) (quoting *Beebe Med. Ctr. Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999)).

Plaintiffs' motion for summary judgment must be granted for the independent reason that Buyer has failed to meet its burden to establish that the Determination

Letter was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).

A party seeking to vacate an arbitration award under Section 10(a)(1) of the FAA

must establish "(1) the existence of fraud by clear and convincing evidence, (2) that

the fraud was not discoverable with the exercise of due diligence, and (3) that the

fraud materially relates to an issue in the arbitration." *Int'l Brotherhood of*

*Teamsters, Local 701 v. CBF Trucking, Inc.*, 440 F. App'x 76, 77–78 (3d Cir. 2011).

The FAA "does not provide for vacatur in the event of any fraudulent conduct, but

only where the *award was procured* by corruption, fraud, or undue means."

*Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990)

(quoting 9 U.S.C. § 10(a)).

Buyer does not dispute that this standard applies to confirmation of the

Determination Letter, and Buyer does not contend that it has established fraud by

"clear and convincing evidence." Indeed, Buyer has not advanced any argument

supported by evidence that the Determination Letter was procured by fraud. Buyer

instead relies on the Court's Opinion denying Plaintiffs' initial motion for summary

judgment without prejudice. Buyer argues that this Court previously determined that

there was a material issue of disputed fact preventing summary judgment, that the

Court's holding is the law of the case, and that Plaintiffs' renewed motion for

summary judgment is an untimely motion for reargument under Court of Chancery Rule 59(f). According to Buyer:

> Giving Defendant the benefit of every reasonable inference, this Court can readily conclude that its prior determination in the Opinion was correctly reached. The present record poses multiple fact question as to whether Plaintiffs' nondisclosure of the Medical Claim Liabilities and Management Bonus Liabilities resulted in the procurement of the PwC Determination Letter by fraud and denied Defendant a "fundamentally fair hearing."

Def.'s Answering Br. 28 (quoting *Hayne, Miller & Farni, Inc. v. Flume*, 888 F. Supp. 949, 942–53 (E.D. Wis. 1995)).

The Opinion observed that Buyer did not have a meaningful opportunity to respond to Plaintiffs' argument that it had never provided notice of a motion to vacate the Determination Letter within ninety days because Plaintiffs raised that issue for the first time in their reply brief. Opinion 52 n.87. The Opinion also observed that "it is possible that the Determination Letter was procured by fraud to the extent that the omission of the Management Bonus Liabilities and the Medical Claim Liabilities from the Interim Financial Statements formed part of the calculations relied upon by PwC in its Determination Letter." *Id.* at 51–52. In that regard, the Opinion noted that the Determination Letter appeared to contradict Buyer's allegations, and indicated that further clarification of that factual issue would be helpful. *Id.* at 52 n.86. Based on the record before me at the time, I

determined that resolving all issues relating to Plaintiffs' motion for summary judgment at once would be the fairest and most efficient method to proceed, and for those reasons, I denied it without prejudice.

The law of the case doctrine applies "'when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation.'" *Frederick-Conaway v. Baird*, 159 A.3d 285, 296 (Del. 2017) (quoting *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990)). The law of the case doctrine appears "'most often when a trial court is required to give effect to law established in a case after it has been appealed,'" but the doctrine also "'applies to decisions rendered by a court that arise again later in the same court, in the same proceedings.'" *Frederick-Conaway*, 159 A.3d at 296 (quoting *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *7 (Del. Ch. Sept. 10, 2015)). Here, the law of the case doctrine does not require denial of the renewed motion for summary judgment because the Opinion denied the first motion for summary judgment without prejudice. The Opinion did not hold that a future motion for summary judgment by Plaintiffs would be unsuccessful—otherwise, denying the

motion for summary judgment "without prejudice" would have been a futile act.[10]

The law of the case doctrine therefore has no application here because granting the

renewed motion for summary judgment is consistent with "the principle of stability

and respect for court processes and precedent." *See Gannett Co., Inc. v. Kanaga*,

750 A.2d 1174, 1181 (Del. 2000).[11]

Buyer's reliance on the Opinion is additionally unavailing because it has

failed to provide "clear and convincing" evidence, as required to vacate the

Determination Letter and to prevent confirmation. 9 U.S.C. § 9 (requiring courts to

confirm arbitration awards unless the award is "vacated, modified, or corrected").

Under Court of Chancery Rule 56(e), a party confronting a supported motion for

summary judgment "may not rest upon the mere allegations or denials of [its]

pleading, but . . . must set forth specific facts showing that there is a genuine issue

for trial." Ct. Ch. R. 56(e). Buyer has submitted no evidence in response to

Plaintiffs' renewed motion for summary judgment. The only evidence that Buyer

---

[10] To the extent that the Opinion may be read to imply that summary judgment was unavailable, the law of the case doctrine does not prevent this Court from clarifying its prior language. *Frederick-Conaway*, 149 A.3d at 297.

[11] For the same reasons, the renewed motion for summary judgment is not a motion for reargument. *See Techmer Accel Hldgs., LLC v. Amer*, 2011 WL 567456, at *3 n.28 (Del. Ch. Feb. 8, 2011) (holding that the Court "made no determination" regarding a particular issue and therefore "there is no decision to reexamine on a Court of Chancery Rule 59(f) motion for reargument").

has submitted to date has been an affidavit submitted in connection with the original motion for summary judgment. *See* Dkt. 26 ("Cherniak Aff."). The affidavit does not satisfy Buyer's burden to present evidence from which any rational trier of fact could infer that Plaintiffs engaged in fraud in procuring the Determination Letter by clear and convincing evidence, as the FAA requires. *See Forsythe*, 915 F.2d at 1022.[12] As the Opinion held, Buyer may eventually prevail on a claim of fraud against the Sellers arising from the transaction, but that does not preclude confirmation of the Determination Letter prior to the resolution of the fraud claim. *See MarkDutch Co 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 328–29 (D. Del. 2019) (declining to deny a motion to confirm an arbitral award because it would "transform a summary proceeding into a protracted dispute").

Buyer has also not presented evidence sufficient to create an issue of fact as to its burden of showing that the fraud was not discoverable with the exercise of reasonable diligence. Buyer argues that "the timing of what [Buyer] discovered and

---

[12] *See Cerberus Int'l v. Apollo Mgm't, L.P.*, 794 A.2d 1141, 1149 (Del. 2002) (adopting majority rule that the substantive burden of proof can be taken into account at the summary judgment stage). In that regard, Buyer's burden of establishing fraud for purposes of the FAA (clear and convincing evidence) is higher than that of its common law fraud counterclaim, which is governed by Delaware law. *See In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 54 (Del. Ch. 2001) (observing that under Delaware law a party must prove fraud by a preponderance of the evidence).

when, and whether [Buyer] could have uncovered Plaintiffs' fraudulent nondisclosures in time to present the matters at the arbitration, are fact-specific issues that must await discovery." Def.'s Answering Br. 28. Buyer cannot rely on that argument to avoid summary judgment. The Cherniak Affidavit submitted in opposition to the original summary judgment motion states:

> Following the Award, Buyer learned of additional bad faith conduct and fraud by Sellers who, upon information and belief, have intentionally concealed information that "past practices" as well as unsigned agreements, provide for merit increases for certain field management personnel each February based upon defined goals and milestones, as well as incentives based on performance targets. . . .

> Cohen has further learned of medical claim liabilities, which were known to Sellers prior to closing, of roughly $500,000 . . . .[13]

The answers to the questions of what Buyer discovered and when is wholly within Buyer's knowledge and control. Buyer controls the Company and has had access to the Company's emails and employees since the closing of the transaction in December 2018. Dkt. 24 ¶ 12 ("Defendant admits entering into the Purchase Agreement and closing on the acquisition of Landmark Acquisition Corporation . . . on or about December 3, 2018."). Discovery of Sellers is not required for Buyer to present facts to establish when it learned of the existence of the items that it claims

---

[13] Cherniak Aff. ¶¶ 44–45.

that establish the grounds for its claim that the Award was procured by fraud. *See*

*Chartis Specialty Ins. Co. v. LaSalle Bank, Nat'l Ass'n*, 2011 WL 3276369 (Del. Ch.

July 29, 2011) (noting that "discovery is limited in actions challenging an arbitration

award under the FAA," and that "post-arbitration discovery is rarely permitted").

Buyer's cagey assertions as to what it discovered and when are not sufficient to deny

summary judgment. *See Bay Capital Finance, L.L.C. v. Barnes and Noble Educ.,*

*Inc.*, 2020 WL 1527784, at \*10 (Del. Ch. Mar. 30, 2020) (observing that when a

party invokes Rule 56(f) to seek additional discovery in response to a motion for

summary judgment, "the onus is on the non-moving party to state with some degree

of specificity, the additional facts sought by the requested discovery") (internal

citations omitted). In short, Buyer has not adequately established a factual basis for

the denial of summary judgment.

For the foregoing reasons, the confirmation of the Determination Letter is

overdue, and Plaintiffs' motion for summary judgment must be granted. The Court

will enter Plaintiffs' proposed form of order contemporaneously with the issuance

of this Letter Opinion.[14]

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor

---

[14] Plaintiffs seek their costs for obtaining confirmation of the Determination Letter in this action. Buyer has not contested that Plaintiffs are entitled to costs in the event that Plaintiffs prevail. *See* Purchase Agreement § 1.3(e) ("The costs of any dispute resolution pursuant to this Section 1.3, including the fees and expenses of the Independent Accounting Firm and of any enforcement of the determination thereof, shall be borne, on the one hand by the Sellers and, on the other hand, by the Buyer, in inverse proportion as they may prevail on the matters resolved by the Independent Accounting Firm, which proportionate allocation shall be calculated on an aggregate basis based on the relative dollar values of the amounts in dispute and shall be determined by the Independent Accounting Firm at the time the determination of such firm is rendered on the merits of the matters submitted. The fees and disbursements of the Representatives of each party incurred in connection with the preparation or review of the Final Closing Statement and preparation or review of any Notice of Disagreement, as applicable, shall be borne by such party.").